## No. 58.

### E. J. FORSTALL'S SONS *v.* HOLLINGSWORTH AND FLOWER.

A party dealing with an ostensible owner of negotiable paper can depend upon the appearance of the negotiable paper and need not require the formalities of pledge which are ordinarily demanded, and this omission is not one which will invalidate the transfer between the contracting parties.

A party placing negotiable paper in the hands of a person whom he clothes as an ostensible owner cannot later abrogate the actions of said obstensible owner. This pledger is treated as a party to the contract and not a third party.

Where the maker of negotiable paper delivers it into the hands of another and then voluntarily clothes him with the ostensible ownership, he is estopped from thereafter complaining of anything to which the ostensible owner could make no complaint, e. g. an informal act of pledge without endorsement.

The Court will adopt the exceptional definition of a word where the adoption of the usual one would occasion hopeless confusion and conflict of laws.

*Appealed from Third District Court, Parish of Orleans.*

*D. S. Bryon,* attorney for plaintiff, appellee.

*A. G. Brice, W. H. Pascoe,* attorneys for defendant, appellant.

His Honor Judge Frank McGloin delivered the opinion and decree of the Court in the words and figures following, to wit;

Plaintiff sued defendants upon their note for $500.00 with interest and cost of protest. The evidence discloses the fact, that plaintiffs are merely the agents of Baring Bros., English Bankers, that the note in suit is one of many, which it is claimed, was given in pledge to that firm, by the Mechanic's and Trader's bank to secure a heavy balance standing against said institution. It seems, that Baring Bros., had extended a standing credit to said bank of 40,000 Ls. Sterling, and had received in pledge, stock, bonds, mortgage notes, etc., having a face value of $218,315.45. As these bonds, stock, etc., depreciated, deficiencies were made good, by delivery of additional value, principally the commercial paper discounted from

time to time, by the debtor bank. As these pieces of paper approached maturity, they were usually withdrawn, and other paper of equal value, but later maturity, substituted. Thus on March 3, 1879, plaintiff, acting for Baring Bros., came into possession of the note sued on, whereof, the maturity was April 9th, 1879. The defendant Hollingsworth, in the meanwhile was accumulating in the Mechanic and Traders Bank, funds to meet said note, and had to his credit on March 19th, 1879, the sum of $629.74. Upon this last named date, this said bank suspended, but there is no proof as to the time, at which the bank was judicially declared to be insolvent, and placed in liquidation. Had these contingencies occurred prior to the maturity of the note sued on, we have no doubt, but that plaintiffs would have proven the facts. The witness Lucwigsen, former cashier of the bank, then engaged by the liquidator in the same capacity, testified in the case. On May 26, 1879, he declares, that the commissioners had then been in possession only three weeks, which would place the date of their assuming control, about the beginning of May, and after the note sued on fell due. Defendants deny that plaintiffs are the bona fide holders of the note, averring that the title thereto was never diverted from the bank; that at the maturity of the note, the same was immediately compensated by the deposit he then had to his credit. The circumstances, as they have been recited were proven by plaintiff in the effort to show the bona fides and legality of their title. The note in question was negotiable, and was not endorsed by the Mechanics and Traders Bank, and the question is does this invalidate the so called pledge.

There seems to be some confusion in the articles of the Civil Code applicable to this case. Article 3156, is as follows "When a debtor wishes to pawn a claim upon another person, he must make it transferrable in the act of pledge and deliver it to the creditor to whom it is transferred the note or instrument which proves its existence, if it be under private signature, and must endorse it if it be negotiable." Article 3158, declares:—"Where a debtor wishes to pawn promissory notes,

bills of exchange, stocks, obligations, or claims upon other persons, he shall deliver to the creditor, the notes, bills of exchange, certificates of stock, or other evidences of the claim, or rights so pawned: and such pawns so made without further formality shall be valid as well against third persons as against the pledgor thereof, if made in good faith."

Under circumstances such as these, the first duties of a Court is to endeavor to reconcile conflicting provisions and it is only where this is impossible, that we are at liberty to elect which shall stand and which be sacrificed. In this case, it is the expression, "without further formality," which creates the apparent conflict. Strike it out, and the two articles can be construed together. Webster defines the twin word "further" and "farther" as signifying: amongst other things, "more or most distant", "more remote; more distant than something else." These same words, by Worcester, are given as synonyms of "at a greater distance; more remotely, beyond, etc." To these, "beyond" in both the lexicographers mentioned, is given as bearing, with others, the sense, "on the farther side of; farther onward than; past." Thus it appears, that we may consider ourselves not entirely uncommitted to hold the word "further" as used in the sense of the word "succeeding" and so applicable only to formalities which are subsequent to delivery. As such endorsement would precede absolute and final delivery, under this view, it would escape being excluded by article 3158, and the two articles, could be construed together, neither, necessarily destroying, or impairing the other. This, we may admit, is not employing the usual signification of the word under consideration. Civil Code Article 14, however, only compels us to "generally adopt such usual significations," thus leaving it open to receive, in exceptional cases, and where absolutely necessary, significations which are not the usual ones. We can conceive no stronger case, demanding the selection of the exceptional definition than where the adoption of the usual one will occasion hopeless confusion or conflict of laws—under such circumstances, we are compelled to suppose that the lawmakers did not intend to create a confusion of legislation and

that they had in mind, when employing a term, such a definition as would leave the law unambiguous and effective. It is also, only by this view that we can comply with the inherited duty of giving full force to different laws as a whole and to each separate provision of any particular law. If, however, not entirely satisfied with this elucidation, and compelled to elect between clauses, in hopeless conflict, there is no alternative but to have recourse to certain arbitrary rules, which are really no better calculated to bring certainty out of confusion and uncertainty. Appealing however to such rules, if we determine to enforce the provisions last written as the latest expression of the legislative will, we find that although article 3158 follows article 3156; yet, the latter is fortified by the still later provision of article 3161, which is as follows,—"on the other hand, this notification of the act of pledge (that required by article 3156) the person owing the debt pledged, shall not be necessary, if the debt be evidenced by a note or other instrument payable to bearer or order; because, in that case, the fact that the note, or instrument shall have been endorsed by the person pledging it to invest the creditor with the privilege above mentioned." The conclusions herein arrived at, have been reached though not by the line of reasoning here adopted, by the Supreme Court of this State in the following cases: Hall vs. Mc Neill, 17 La. 185; Winchester vs. Ory, 17 La. 428; Robinson vs. Shelton, 2 Rob. 277; Flucker vs. Bullard, 2 La. Ann. 388. The court in those cases, also holds, pledges of negotiable paper without such endorsement as absolutely without force or effect; and in so doing, it but maintains the doctrine that privileges and pledges, being in derogation of the rights of general creditors are *stricti juris,* and that the formalities of law in such cases, can not be dispensed with or their absence be excused. Martin vs. Creditors, 15 La. Ann. 165. Appellees contend that even if their pledge be not good as to creditors, it is as to defendants, who can not be considered a third person, strictly speaking in this matter. This view of the case has the sanction of the Supreme Court of the State in the case of President Etc., vs. Gaiennie,

21 La. Ann. 556, and Mathews vs. Rutherford, 7 La. Ann. 228, and was adopted by the Court *a quo*, and, whatever we might have done, had the matter been *res nova*, we do not feel justified in disregarding these precedents, and declaring that the lower judge erred in following them. We may state, however, that it is very doubtful, whether Hollingsworth was not a third person to the pledge requested, entitled to resist the same, and call it into question, for failure of compliance with the law. The propriety of restricting this right of complaint to creditors alone, and not extending it to any one who is a third person to the contract of pledge and whose rights are affected thereby is very doubtful. That Hollingsworth was a third person as to this contract between plaintiff and the bank, is certain, both upon general principles by virtue of the articles of Civil Code pertinent thereto, Civil Code 3556, pa. 32, gives the true definition of third person as follows: with respect to a judgment, or contract, third persons are all who are not parties to it. Unless, we confound the original contract between defendant and the bank, resulting in the note sued upon, with the subsequent one between plaintiff and the bank, whereby said note was pledged, we must hold Hollingsworth to have been a third person to the latter convention. His right of complaint lies in the fact, that by this pledge, he has been deprived of the privilege of applying the fund he has accumulated in the bank, for that purpose, to the payment of the note, which he might have done, by way of compensation had his paper been in his portfolio, at the date of the convention, Bank of La. vs. Fowler, 10 Rob. 197; Commissioners vs. Bein, 3 Rob. 414. In the cases cited, 7 La. Ann. 227, and 21 La. Ann. 555, the decision is placed also upon the ground, that by delivery of commercial negotiable paper into the hands of another, and then voluntarily clothing the latter with the ostensible ownership, a person estops himself from complaining of anything, with regards to which, the ostensible owner and real party to the contract could make no complaint. In other words that a person dealing with an apparent owner of such property, has the right to presume upon ap-

pearances and omit formalities in a pledge, which would not invalidate it as a party contractant, if this be the correct doctrine, it should be equally applicable to factors, or others, who though apparently owners are really but agents, when they pledged the property of their undisclosed principal. It might therefore, be urged that this runs counter to other precepts of natural justice. A party dealing with an apparent owner, claims against the true owner, and is protected in his acquired rights, by equitable principles alone. One who relies upon equity must come into the court free from fraud and negligence, for it is certainly not the province of equity to stand between men, and the consequences of their own laches, and again, when parties so trust their property to another, they incur sufficient risk, under the law, and the propriety of adding to their hardship, is very questionable, while, they entrust the agent, or other person, with the power to sell or pledge, this power is not always a right so to do, and it should stand for the right, only where all the forms of law are observed, and the risk incurred might be considered as only that resulting from such formal and complete disposition of their property. Still further where a pledgor, takes commercial paper such as that sued upon, he has more notice than men dealing with a factor usually receive, he sees from the face of the paper, that the drawer is interested therein and that his rights may be effected by the contract. He is therefore advised of the existence of such interest and warned of the necessity of strict compliance with the law in taking his pledge, and if he omits any essential formality, he may well be considered as assuming the risk, that the drawer, who is a stranger to his contract, may have rights to be impaired thereby.

These considerations are submitted to indicate the field of discussion, which we should have considered upon, were this question *res nova*. We do not however deem it advisable for us as a general rule, to disregard precedents such as those discussed. The settled jurisprudence of this state, we shall endeavor to follow, leaving it to the Supreme Court to make

changes of a radical nature, when necessity or reason requires.

Judgment affirmed, with costs in both courts against defendant, Appellant.